50 F.3d 1526
 75 A.F.T.R.2d 95-1722, 63 USLW 2686,
95-1 USTC P 50,201,
Bankr. L. Rep. P 76,463, 26 UCC Rep.Serv.2d 570
 In re LMS HOLDING COMPANY, Petroleum Marketing Company, and
Retail Marketing Company, Debtors.
UNITED STATES of America, Appellant,
v.
LMS HOLDING COMPANY, Petroleum Marketing Company, and Retail
Marketing Company, Appellees.
 No. 93-5269.
 United States Court of Appeals,
Tenth Circuit.
 April 4, 1995.
 
 Thomas J. Clark, Attorney, Tax Div. (Loretta C. Argrett, Asst. Atty. Gen., Of counsel: Stephen Charles Lewis, U.S. Atty., Gary D. Gray, Attorney, Tax Div., Dept. of Justice, Washington, DC, with him on the briefs), for appellant.
 Thomas A. Creekmore III (Pamela H. Goldberg, also of Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, with him on the brief), for appellees.
 Before BALDOCK and LOGAN, Circuit Judges.*
 LOGAN, Circuit Judge.
 
 
 1
 The United States appeals the bankruptcy court's decision, affirmed by the district court, granting summary judgment for plaintiffs LMS Holding Company, Petroleum Marketing Company, and Retail Marketing Company (RMC) (collectively, debtors). The only issue on appeal is whether RMC was entitled to avoid an Internal Revenue Service (IRS) lien thereby leaving the IRS with only an unsecured claim against RMC. We have jurisdiction pursuant to 28 U.S.C. Sec. 158(d). See Adelman v. Fourth National Bank and Trust Company (In re Durability, Inc.), 893 F.2d 264, 266 (10th Cir.1990).[1]
 
 
 2
 The IRS perfected a notice of federal tax lien against MAKO, Inc. based on assessments for unpaid federal taxes of more than $330,000. MAKO later filed a petition for relief under Chapter 11 of the Bankruptcy Code. Pursuant to the MAKO plan of liquidation (MAKO Plan), RMC, an unrelated entity, acquired all of the assets of the MAKO bankruptcy estate and assumed all of MAKO's secured liabilities. The IRS consented to the liquidation plan and the parties agree that it retained its lien against the property securing the IRS claim. The IRS interests were represented through counsel during the administration of the MAKO bankruptcy. The bankruptcy court confirmed the MAKO plan in August 1989. The IRS never filed any federal tax lien notices in the name of RMC.
 
 
 3
 In September 1991 RMC, together with LMS Holding Company and Petroleum Marketing Company, filed Chapter 11 bankruptcy petitions. Thereafter the debtors jointly filed a complaint alleging they were entitled to avoid the federal tax lien on assets RMC acquired from MAKO. The bankruptcy court found that RMC was entitled to avoid the IRS lien under 11 U.S.C. Sec. 544(a)(1), and the district court affirmed that decision.
 
 
 4
 We review the district court's grant of summary judgment under the same standards that governed the district court's review. United States v. Berger (In re Tanaka Bros. Farms, Inc.), 36 F.3d 996, 998 (10th Cir.1994). "Summary judgment is appropriate if 'there is no genuine issues as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " Hagelin for President Committee v. Graves, 25 F.3d 956, 959 (10th Cir.1994) (quoting Fed.R.Civ.P. 56(c)), cert. denied, --- U.S. ----, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995).
 
 
 5
 The Bankruptcy Code provides that a trustee has the right "without regard to any knowledge of the trustee or of any creditor" to avoid "any obligation incurred by the debtor that is voidable by ... [a subsequent judgment lien creditor] or a bona fide purchaser of real property ... [who] has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. Sec. 544(a). More specifically as to lien avoidance, 11 U.S.C. Sec. 545(2) provides that "[t]he trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien ... is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists."[2] A debtor in possession in a Chapter 11 proceeding, as here, has essentially the same rights, powers and duties of a bankruptcy trustee. See 11 U.S.C. Sec. 1107(a). We must determine whether the federal tax lien was perfected as against a hypothetical bona fide purchaser at the time RMC filed for bankruptcy.
 
 
 6
 A federal tax lien arises when a person fails to pay assessed taxes; the amount due becomes a lien on "all property and rights to property" belonging to the person assessed. I.R.C. Sec. 6321. However, this lien is not "valid as against any purchaser ... or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." Id. Sec. 6323(a). The first two subsections of Sec. 6323(f) provide for filing as the state of locus requires when, as here, the state has applicable law. It is undisputed that the IRS properly filed its lien against MAKO in Oklahoma, and apparently also in other states in which MAKO had property.[3]
 
 
 7
 Subsection 6323(f)(3) provides that "[t]he form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary. Such notice shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien." The regulations promulgated under this statute require that the notice of lien be filed on a Form 668 "Notice of Federal Lien under Internal Revenue Laws" and "identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose." Treas.Reg. Sec. 301.6323(f)-1(d)(1) and (2). These "statutory" regulations have the force and effect of law. United States v. Correll, 389 U.S. 299, 305-06, 88 S.Ct. 445, 448-49, 19 L.Ed.2d 537 (1967).
 
 
 8
 As debtors acknowledge, the filing of the tax lien notice naming MAKO as taxpayer perfected a lien against MAKO, and that lien "continued in the actual assets transferred by MAKO to RMC. As a result, the tax lien against MAKO followed the MAKO assets into the hands of RMC and was enforceable against RMC prior to RMC's bankruptcy." Answer Brief of Appellees at 20-21; see United States v. Bess, 357 U.S. 51, 57-59, 78 S.Ct. 1054, 1058-59, 2 L.Ed.2d 1135 (1958); United States v. Cache Valley Bank, 866 F.2d 1242, 1244-45 (10th Cir.1989). But the bankruptcy and district courts determined that when debtors filed for bankruptcy the lien was not valid against a hypothetical bona fide purchaser from RMC. Those courts reasoned that when RMC assumed federal tax liabilities secured by the lien against MAKO, RMC became "the taxpayer"; that to comply with I.R.C. Sec. 6323(f) and the corresponding regulations, the IRS was required to refile or correct the lien notice by substituting "RMC" for "MAKO" as the taxpayer in order to preserve its priority.[4]
 
 
 9
 In holding that the lien was "unperfected as the IRS failed to file a new notice of tax lien showing RMC as the new taxpayer," App. 30, the bankruptcy court relied on Davis v. United States, 705 F.Supp. 446 (C.D.Ill.1989), and United States v. Clark, 81-1 T.C.M. (CCH) p 9406 (S.D.Fla.1981). Both Davis and Clark involved changes in a woman's name when she married, in circumstances in which the court found that the IRS had clear notice of the taxpayers' name change. The bankruptcy court reasoned that the IRS's duty to file a notice of tax lien against RMC was "even more compelling [than in the name change cases] because there was not only a name change, but a total change in the taxpayer entity." App. 30. We do not agree.
 
 
 10
 The name change cases are distinguishable because in them there truly was a change in the identity of "the taxpayer." RMC is not a new entity emerging from the bankruptcy of MAKO, analogous to a change of identity. Rather, RMC is "an unrelated third party entity," LMS Holding Co. v. Core-Mark Mid-Continent, Inc., 50 F.3d 1520, 1523 (10th Cir.1995), to which the assets of MAKO were transferred. That RMC also assumed MAKO's liabilities does not make it "the taxpayer." An entity in RMC's position, purchasing another corporation's assets and assuming its liabilities, whether in a bankruptcy reorganization or otherwise, has long been characterized as the transferee and not the taxpayer. See, e.g., California Iron Yards Corp. v. Commissioner of Internal Revenue, 82 F.2d 776, 779 (9th Cir.), cert. denied, 299 U.S. 553, 57 S.Ct. 15, 81 L.Ed. 407 (1936); Continental Baking Co. v. Helvering, 75 F.2d 243, 244 (D.C.Cir.1934), cert. denied, 295 U.S. 756, 55 S.Ct. 914, 79 L.Ed. 1699 (1935); Helvering v. Wheeling Mold & Foundry Co., 71 F.2d 749, 752 (4th Cir.), cert. denied, 293 U.S. 603, 55 S.Ct. 119, 79 L.Ed. 695 (1934).
 
 
 11
 Our conclusion that RMC is not the taxpayer, however, does not resolve the question of the need to refile. The regulations do not speak directly to the need to refile against the transferee in circumstances like that before us. The only provisions in Sec. 6323 that specifically reference refiling relate to time limits, requiring refiling essentially every eleven years. I.R.C. Sec. 6323(g). Nevertheless, Congress was concerned with the problem of notice to those who deal with debtors whose property is subject to the government's tax lien.
 
 
 12
 I.R.C. Sec. 6323(f)(4) answers the refiling question, we believe, in the context of tax liens against real estate. When the state maintains an adequate system for public indexing of federal tax liens, the bona fide purchaser of real estate prevails unless the notice of lien is "entered and recorded in [a public index at the place of filing] in such a manner that a reasonable inspection of the index will reveal the existence of the lien." Id.[5] Because Oklahoma has adopted the Uniform Federal Lien Registration Act, it apparently has a satisfactory method of indexing federal tax liens. MAKO's ownership of the realty presumably was recorded. Thus, the government's tax lien filed against MAKO would show in any search of the chain of title by a person buying real property from MAKO's transferee, RMC. In those circumstances--because any purchaser would be considered to have notice of the unreleased tax lien against MAKO, RMC's predecessor in the title--Sec. 6323(f)(4) dictates that the government's lien would be valid against the debtor in possession of RMC's bankruptcy estate.
 
 
 13
 The Internal Revenue Code is less explicit as to refiling against a transferee when the lien is against personal property. But we believe Sec. 6323 provides a method of analysis that we can utilize to determine the refiling requirement. The relative priority of a federal lien for unpaid taxes is a matter of federal law. United States v. Equitable Life Assurance Society, 384 U.S. 323, 330, 86 S.Ct. 1561, 1565, 16 L.Ed.2d 593 (1966). But I.R.C. Sec. 6323(h)(6) defines "purchaser" for purposes of federal tax lien avoidance as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." (emphasis added). Thus, the federal law looks to state law to define the rights of a bona fide purchaser--the position occupied by a bankruptcy trustee or debtor in possession under Chapter 11. See Woodson v. Utica Square Nat'l Bank of Tulsa (In re McClain), 447 F.2d 241, 243-44 (10th Cir.1971) (bankruptcy trustee "is in the position of a third-party lien creditor without notice. His priority is determined by the substantive law of the state where the property is located."), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972).
 
 
 14
 Under the Uniform Commercial Code, adopted in Oklahoma, a lien creditor has priority over an unperfected secured creditor. Okla.Stat.Ann. tit. 12A, Sec. 9-301(1)(b), (3). To acquire a perfected security interest the creditor must file a financing statement describing the collateral subject to the security interest and naming the debtor. Id. Secs. 9-302(1), 9-402(1). A federal tax lien becomes a lien on all property of the debtor, so the property need not be described. But I.R.C. Sec. 6323(f)(1)(A)(ii) contemplates essentially the same kind of filing, under state law, to perfect the lien against a debtor's personal property. On the need to refile after a transfer of the property subject to the secured interest, Okla.Stat.Ann. tit. 12A, Sec. 9-402(7) states that "[a] filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer."[6] This statement was added to the Uniform Commercial Code in 1972, and adopted in Oklahoma in 1981. The official UCC Comment 8 to the addition states the following:
 
 
 15
 Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in pre-Code law and under the Code. This Article now answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.
 
 
 16
 Under this analysis a purchaser from RMC would have a duty to ask RMC's source of title--here MAKO--and search under MAKO's name for liens. Such a search would reveal the government's tax lien.
 
 
 17
 We have recently dealt with this issue in the instant bankruptcy proceedings, with respect to a nongovernment creditor. We held that the creditor's security interest remained perfected in collateral actually transferred to RMC under the MAKO plan, LMS Holding Co., 50 F.3d at 1524, but that a new filing naming RMC would be required to establish the security interest in RMC's after-acquired property. Id., at 1525.
 
 
 18
 Consistent with LMS Holding Co., we here hold that the government's tax lien remained perfected in the assets transferred to RMC from the MAKO bankruptcy, but that property acquired by RMS after the transfer would not be subject to the tax lien because the IRS did not refile against RMS.
 
 
 19
 REVERSED and REMANDED for further proceedings consistent herewith.
 
 
 
 *
 The late Honorable Juan G. Burciaga, United States District Judge, United States District Court for the District of New Mexico, sitting by designation, heard oral argument in this case but did not participate in the final decision
 
 
 [1]
 The United States filed a notice of appeal from the district court's order affirming the bankruptcy court's determination that RMC was entitled to avoid the lien of the United States. The bankruptcy court then found, pursuant to Bankruptcy Rule 7054(a) and Fed.R.Civ.P. 54(b), that although it had not yet adjudicated other claims and cross-claims raised by parties in this adversary proceeding, there was no just reason for delaying adjudication of the debtors' dispute with the United States
 
 
 [2]
 In their summary judgment motion debtors relied on 11 U.S.C. Sec. 544; the bankruptcy and district courts also applied Sec. 544. While we believe that the more specific provision for avoidance of statutory liens under Sec. 545 is applicable here, either section provides the same avoidance power
 
 
 [3]
 Oklahoma has adopted the Uniform Federal Lien Registration Act, Okla.Stat.Ann. tit. 68, Secs. 3401-3407, which requires filing notices of liens on real property in the office of the county clerk where the property is located. Liens on personal property of corporations with their principal executive office in Oklahoma are filed in the office of the county clerk of Oklahoma County, Oklahoma. Id. Sec. 3403 B, C. Apparently the IRS filed notices of federal tax liens against MAKO in Arkansas, Missouri and Kansas as well. See Appellee's Supp.App. tab 6 at 3. The arguments and briefs focused on the Oklahoma filings, which we discuss here. The rulings we make, based on the Internal Revenue Code, are equally applicable to notices filed in other states, and inform the district court's analysis on remand as to claims made against assets located in those states
 
 
 [4]
 Under the MAKO Plan, RMC became contractually responsible for MAKO's tax debt. When RMC failed to meet those obligations, the IRS could have made a demand for payment, and if RMC did not pay, a lien would have arisen under I.R.C. Sec. 6321. The IRS then could have filed a notice of federal tax lien against RMC, and if the notice met the requirements of Sec. 6323, the lien would have attached to all assets of RMC, and would have been perfected and enforceable against a hypothetical bona fide purchaser or later perfect judgment lien creditor
 
 
 [5]
 Both the Davis and Clark cases, relied upon by the bankruptcy and district courts, involved real estate and bona fide purchasers who took the property without actual knowledge of the taxpayers' name changes. Importantly, in both cases a search of the filing record would not show the lien against the taxpayer in the chain of title. In Clark, the real property at issue was acquired in the changed name after the marriage. In Davis, at the time the federal tax lien was filed the real property was titled in the name of a trustee who later conveyed it to taxpayer under her changed married name
 
 
 [6]
 Cf. Okla.Stat.Ann. tit. 12A, Sec. 9-302(2). "If a secured party assigns a perfected security interest, no filing as provided for in this article is required to continue the perfected status of the security interest against creditors of and transferees from the original debtor. " (emphasis added)